UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:07CV-00013-EHJ

DEBORAH L. HENDRICKS                                                                    PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                         DEFENDANT

### FINDINGS OF FACT, CONCLUSIONS OF LAW
### AND RECOMMENDATION

#### BACKGROUND

Before the Court is the complaint (DN 1) of Deborah L. Hendricks ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). Both the plaintiff (DN 17) and the defendant (DN 18) have filed a Fact and Law Summary.

The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 9) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. 28 U.S.C. Section 636(b)(1)(B). By Order entered July 31, 2007 (DN 9), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

#### FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance benefits on August 18, 2003[1]

---

[1] The protective filing date is July 29, 2003 (Tr. 47).

(Tr. 48-50). Plaintiff alleged that she became disabled on February 20, 2003 as a result of degenerative disc disease, status-post right hemilaminectomy at L5-S1 (Tr. 17, 48, 59). Administrative Law Judge Marsha Stroup ("ALJ") conducted a hearing on September 22, 2004 in Evansville, Indiana (Tr. 212). The plaintiff was present and represented by attorney Bonnie Donahue. Also present and testifying was Lisa Courtney as a vocational expert (Tr. 212).

In a decision dated February 14, 2005, the ALJ utilized the five-step sequential evaluation process for evaluating adult disability claims (Tr. 16-23). At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability, February 20, 2003 (Tr. 17). At the second step, the ALJ found that plaintiff's degenerative disc disease status-post hemilaminectomy at L5-S1 is a "severe" impairment (Tr. 17, 23). At the third step, the ALJ found plaintiff does not suffer from an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 21, 23).

At the fourth step, the ALJ found that plaintiff retains the ability to perform the exertional demands of sedentary work but would need the option to sit or stand periodically to walk away from the work station and stretch (DN 21, 23). After considering the vocational expert's testimony, the ALJ found that plaintiff is unable to return to any of her past relevant work given her residual functional capacity (Tr. 22). At the fifth step, the ALJ considered the vocational expert's testimony as well as plaintiff's age, education, past work experience, and residual functional capacity (Tr. 22). The ALJ found that plaintiff is capable of performing a significant number of jobs that exist in the regional and national economies (Tr. 22). Based on the above findings, the ALJ concluded that plaintiff has not been under a "disability," as defined in the Social Security Act, from the alleged onset date through the date of the decision (Tr. 22, 23).

Plaintiff timely filed a request for review by the Appeals Council (Tr. 11, 12). Additionally, plaintiff submitted in support of her request for review a letter dated June 23, 2006 (Tr. 7, 209-211). The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 4-6).

## CONCLUSIONS OF LAW

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that satisfies the

>duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?
>
>4)   Does the claimant have the residual functional capacity to return to his or her past relevant work?
>
>5)   Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 4-6). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serv's., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Serv's., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff challenges the ALJ's findings at the third step (DN 17 at Pages 10-11). Specifically, plaintiff argues the findings do not comport with applicable law because the ALJ failed to consider her obesity in determining whether she meets or medically equals Listing 1.04 in Appendix 1 (DN 17, Pages 10-11). In response, defendant asserts there is insufficient evidence in the record to affirmatively establish plaintiff has a distinct and separate medically determinable impairment related to her weight (DN 18 at Page 7). Additionally, defendant argues that the medical evidence does not support a finding that plaintiff meets or equals Listing 1.04A (DN 18 at Pages 4-7).

Social Security Ruling 02-1p indicates that obesity will be considered in determining whether: a claimant has a medically determinable impairment; a claimant's impairment(s) is severe; a claimant's impairment(s) meets or equals the requirements of an impairment listed in Appendix 1; and a claimant's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy. Social Security Ruling 02-1p, 2000 WL 628049, *3 (September 12, 2002).

Essentially, clinical guidelines, established by the National Institute of Health ("NIH"), and a claimant's Body Mass Index ("BMI")[2] are used to classify overweight and obesity in adults. Social Security Ruling 02-1p. More specifically, a BMI of 25-29.9 is classified as "overweight" and a BMI of 30.0 or above is classified as "obesity." Social Security Ruling 02-1p. Further, the NIH clinical guidelines recognize the following three levels of obesity: Level I includes BMIs of 30.0-34.9; Level II includes BMIs of 35.0-39.9; and Level III which is termed "extreme" obesity

---

[2]Body Mass Index ("BMI") is the ratio of an individual's weight in kilograms to the square of his or her height in meters.

5

includes BMIs of 40 and greater. Social Security Ruling 02-1p. While these levels describe the extent of obesity, "they do not correlate with any specific degree of functional loss." Social Security Ruling 02-1p, 2000 WL 628049, *2 (September 12, 2002).

The diagnostic opinion of an examining or treating physician will generally be relied upon in establishing the existence of obesity. Social Security Ruling 02-1p. In cases where the administrative record does not include a diagnosis of obesity but does include clinical notes or other medical records showing consistently high body weight or BMI, a medical source "may" be asked to render an opinion on whether the claimant has obesity. Social Security Ruling 02-1p. However, in most cases an Administrative Law Judge will determine the presence of obesity based on medical findings and other evidence in the case record,[3] even if a treating or examining source has not articulated a diagnosis of obesity. Social Security Ruling 02-1p.

The undersigned will now summarize the relevant portions of the administrative record. When plaintiff presented to the emergency room at Deaconess Hospital on February 19 and 23, 2003 her height was 5 feet 7 inches and her weight was 180 pounds (Tr. 126, 134). Thus, she had a BMI of 28.2 which is considered overweight according to the NIH clinical guidelines. Social Security Ruling 02-1p.

When Dr. Sanapati, a treating pain management specialist at Advanced Pain Care Clinic, treated plaintiff on April 9, 2003, her body weight was 228 pounds (Tr. 154). This means an increase of 48 pounds in less than 2 months and a new BMI of 35.7 which is classified as Level II obesity. Social Security Ruling 02-1p. A May 21, 2003, treatment note prepared by Dr. Sanapati

---

[3] In deciding whether a claimant has obesity an Administrative Law Judge will consider the claimant's weight over time. Social Security Ruling 02-1p.

indicates plaintiff's weight is 228 pounds (Tr. 150). This means she had a BMI of 35.7 which is classified as Level II obesity. Social Security Ruling 02-1p.

On July 28, 2003 Dr. Jenison, a treating general practitioner, noted on an Attending Physician Statement that plaintiff's height was 5 feet 7 inches and her weight was 230 pounds (Tr. 156). This means a BMI of 36.0 which is classified as Level II obesity. However, a September 10, 2003 treatment note prepared by Dr. Mukherji indicated plaintiff's weight was 220 pounds (Tr. 193). Thus, her BMI decreased to 34.5 which is classified as Level I obesity. Social Security Ruling 02-1p.

Treatment notes prepared by Dr. Jenison that addressed the time frame November 19, 2003 through June 1, 2004 indicate plaintiff's highest weight was 233 pounds and her lowest weight was 223 pounds (Tr. 205, 206, 207, 208). Thus, during this time frame her BMI was as high as 36.5 which is Level II obesity and as low as 34.9 which is Level I obesity. Social Security Ruling 02-1p.

On February 5, 2004, plaintiff's weight was 229 pounds and Dr. Cosica's diagnosis included "mild" obesity (Tr. 195, 196). Notably, at this weight plaintiff's BMI was 35.9 and the NIH clinical guidelines would classify her as Level II obesity. Social Security Ruling 02-1p.

Finally, during the September 22, 2004 administrative hearing plaintiff testified that her current weight was about 200 pounds (Tr. 219). If plaintiff's testimony is accurate, she lost 24 pounds since June 1, 2004 (Tr. 205) and she had a BMI of 31.3 which is classified Level I obesity. Social Security Ruling 02-1p.

Apparently, plaintiff did not claim obesity as an impairment prior to issuance of the ALJ's decision. Nevertheless, there was more than enough objective evidence in the medical record

to put the ALJ on notice that plaintiff was teetering between Level I and Level II obesity from May 21, 2003 through June 1, 2004 (Tr. 150, 154, 156, 193, 195, 205, 206, 207, 208). Moreover, the record contains a diagnosis of mild obesity (Tr. 196). Yet the ALJ failed to make any findings regarding this impairment despite an obligation to do so. Social Security Ruling 02-1p.

Clearly, the objective medical evidence in the record demonstrates plaintiff's obesity is a "medically determinable" impairment. 20 C.F.R. § 404.1508; Social Security Ruling 96-4p; Social Security Ruling 96-3p; Social Security Ruling 02-1p. Moreover, this "medically determinable" impairment meets the duration requirement in 20 C.F.R. § 404.1509. However, the record is not sufficiently developed to determine if the impairment is "severe" within the meaning of the regulations. 20 C.F.R. § 404.1520(a)(4)(ii).

The undersigned now turns to the ALJ's findings at the third step. Despite a clear directive in Social Security Ruling 02-1p, the ALJ did not consider whether plaintiff's degenerative disc disease, status-post hemilaminectomy at L5-S1, in combination with her obesity meets or medically equals a listed impairment. Notably, when an impairment or combination of impairments does not meet the severity requirements of a listing, the Administrative Law Judge looks to the opinions of the non-examining State agency medical advisers for guidance on the issue of whether the medical findings are at least equal in severity and duration to listing findings. 20 C.F.R. § 404.1526(a) and (b); Social Security Ruling 96-5p; Deters v. Secretary of Health, Education and Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986). Here, however, both non-examining State agency medical consultants overlooked plaintiff's obesity.[4] In sum, plaintiff's obesity was not a factor the

---

[4]On November 6, 2003 a non-examining State agency medical adviser reviewed the evidence in the record and rendered opinions regarding plaintiff's medical impairments (Tr. 114-123). Notably, the State agency medical adviser makes no mention of obesity despite

8

ALJ considered in determining whether plaintiff meets or equals a listing in Appendix 1 (Tr. 16-23). Therefore, the ALJ's findings are not supported by substantial evidence in the record and do not comport with applicable law.

Next, plaintiff challenges some of the findings the ALJ made at the fourth step in the sequential evaluation process (DN 17 at Pages 11-18). By way of background, at the fourth step the ALJ made findings regarding the weight assigned to medical source statements in the record, the plaintiff's credibility[5], plaintiff's residual functional capacity[6], the physical and mental demands of plaintiff's past relevant work, and plaintiff's ability to return to her past relevant work.

In her argument, plaintiff points out that the ALJ rejected each and every doctor's opinion concerning exertional and non-exertional limitations. For this reason, plaintiff accuses the ALJ of taking on the role of a medical expert in making the credibility and residual functional capacity findings. Notably, defendant does not directly respond to these contentions. Instead, defendant argues the ALJ's findings are supported by substantial evidence in the record.

With the exception of the "need to change positions" (Tr. 19), the ALJ discounted

---

acknowledging that plaintiff's weight was 228 pounds (Tr. 114-123). On January 5, 2004 a second State agency medical consultant reviewed the record and rendered opinions regarding plaintiff's medical impairments (Tr. 105-112). Again, there is no mention of obesity in the State agency medical adviser's report (Tr. 105-112).

[5]In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. § 404.1529; Social Security Ruling 96-7p.

[6]The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546.

9

the exertional and non-exertional limitations expressed by the treating, examining, and non-examining physicians (Tr. 18-21). Thus, it is reasonable to conclude there is no medical opinion in the record that supports the ALJ's findings regarding plaintiff's credibility and residual functional capacity. As a lay person the ALJ simply is not qualified to interpret the raw medical data in functional terms. Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Lenon v. Apfel, 191 F.Supp.2d 968, 977 (W.D. Tenn. 2001). Moreover, despite the obligation to do so, the ALJ did not consider plaintiff's obesity in making the residual functional capacity findings.[7] Social Security Ruling 02-1p, 2000 WL 628049, *6 (September 12,

---

[7]In relevant part, the ruling reads as follows:
"Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected. ...

An assessment should also be made of the effect obesity has upon the individual's ability to perform a routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ... our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. ...

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from

10

2002). Therefore, the ALJ's findings regarding plaintiff's credibility and residual functional capacity are not supported by substantial evidence in the record and do not comport with applicable law.

The undersigned will now address whether the ALJ's findings at the fifth step are supported by substantial evidence. Notably, a vocational expert's testimony can constitute substantial evidence to support an Administrative Law Judge's finding that a claimant is capable of performing a significant number of jobs in the national economy. Bradford v. Secretary, Department of Health and Human Services, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam). However, the vocational expert's testimony must be based on a hypothetical question that accurately portrays the claimant's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Since the ALJ's residual functional capacity findings are not supported by substantial evidence in the record and do not comport with applicable law, the undersigned concludes the ALJ's hypothetical questions to the vocational expert do not accurately portray plaintiff's physical impairments.

The undersigned is cognizant of other arguments raised by plaintiff. However, the undersigned concludes it is not necessary to address the remainder of plaintiff's arguments because it is clear that the final decision of the Commissioner is not supported by substantial evidence in the record. Further, it does not fully comport with applicable law, including the requirement that all evidence in the case record be considered in making a determination whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(3). Moreover, it is apparent that plaintiff has been prejudiced.

---

the arthritis alone."

Social Security Ruling 02-1p, 2000 WL 628049, *6 (September 12, 2002).

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the final decision of the Commissioner is not supported by substantial evidence and does not comport with applicable law. The undersigned recommends, pursuant to sentence four of 42 U.S.C. § 405(g), that the final decision of the Commissioner be REVERSED and this matter be remanded to the Commissioner to consider evidence regarding plaintiff's obesity and to remedy the above identified defects in the original proceedings.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:   Counsel